**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| RAYMOND DUNCAN, | : | |
| | : | Civil No. 07-1494 (RMB) |
| Petitioner, | : | |
| | : | |
| v. | : | |
| | : | OPINION |
| CHARLES SAMUELS, JR., | : | |
| | : | |
| Respondent. | : | |

**APPEARANCES:**

    RAYMOND DUNCAN, Petitioner pro se
    #16671-014
    F.C.I. Fort Dix
    East P.O. Box 2000 - West P.O. Box 7000
    Fort Dix, New Jersey 08640

**BUMB, District Judge**

    This matter comes before the Court upon pro se petitioner, Raymond Duncan's ("Duncan") motion for reconsideration of this Court's April 5, 2007 Opinion and Order dismissing Duncan's petition for a writ of habeas corpus under 28 U.S.C. § 2241. Duncan filed his motion for reconsideration on or about April 10, 2007.[1]  (Docket Entry No. 4).

---

    [1] Duncan's motion is dated April 10, 2007, but was not received by the Court until April 27, 2007.  The Court finds that Duncan "filed" his motion on the date he handed it to prison officials to be mailed to the Court for filing.  See Houston v. Lack, 487 U.S. 266, 276 (1988); Burns v. Morton, 134  F.3d 109, 113 (3d Cir. 1998)(incorporating the "mailbox rule" for habeas

The Court will consider petitioner's motion without oral argument pursuant to Fed.R.Civ.P. 78.  For the reasons stated below, the motion is denied.

## I.   BACKGROUND

On or about March 28, 2007, Duncan filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, seeking derivative citizenship under 8 U.S.C. § 1341(a)(1),(2) and (3). In his petition, Duncan stated that he arrived in the United States on or about May 19, 1986, as a permanent resident alien, and that he was in the custody of his father, Trevor E. Duncan, at that time.  Duncan further alleged that he was 15 years old when his father became a U.S. citizen.

This Court dismissed Duncan's habeas petition for lack of jurisdiction because Duncan did not avail himself of the administrative process necessary to a claim of citizenship before bringing this action in federal court.  Duncan did not show that he had applied for a certificate of citizenship by filing a Form N-600 application with the U.S. Citizenship and Immigration Services ("CIS"),[2] or that there was an administrative

---

petitions submitted by inmates confined in an institution). Since the Court does not know the actual date that Duncan handed his motion papers to prison officials for mailing, the Court will use the date petitioner signed and dated his motion, April 10, 2007.

   [2]  Pursuant to the Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 (2002), the Immigration and Naturalization Services ("INS") was abolished.  On March 1, 2003,

determination with respect to Duncan's claim of citizenship for this Court to review.  This Court further found that Duncan had no alternative basis for jurisdiction under the Administrative Procedures Act ("APA"), 5 U.S.C. § 701, et seq., or under the Mandamus Act, 28 U.S.C. § 1361, because Duncan had not filed the appropriate application (Form N-600) with the proper agency (CIS) and there exists an adequate administrative means for obtaining derivative citizenship that Duncan failed to pursue or exhaust before turning to federal court.  However, the dismissal of Duncan's habeas petition was without prejudice to Duncan renewing his claim after he had exhausted his administrative remedies.

Duncan now seeks to have this Court reconsider its dismissal of the petition based on alleged errors of law and fact.  First, Duncan attempts to provide supporting facts concerning his father's naturalization and custody of Duncan.  Duncan attaches a copy of his father's Certificate of Naturalization, dated December 13, 1985.  Duncan also provides a copy of his birth record, showing a birth date of January 5, 1971 and that his

---

most of the functions of the INS were transferred to the Department of Homeland Security ("DHS").  See Authority of the Secretary of Homeland Security; Delegations of Authority; Immigration Laws, 68 Fed. Reg. 10922 (March 6, 2003).  Three departments within the DHS assumed the INS's responsibilities: (a) U.S. Citizenship and Immigration Services ("CIS") has taken on the INS's immigration benefit services; (b) U.S. Immigration and Customs Enforcement ("ICE") has assumed the INS's law enforcement functions; and (c) U.S. Customs and Border Protection ("CBP") has taken the border patrol.

father is Trevor Esquire Duncan.  Duncan admits that he was residing in Jamaica when his father became a U.S. citizen, but contends that his father provided financial support.  Duncan claims that he arrived in the United States on May 5, 1986 and was in his father's custody from that point forward.

Second, Duncan disagrees with the Court's comment that there were no allegations in the petition that Duncan is subject to removal from the United States or that he had been noticed for removal proceedings.  Duncan now states that he has received a notice of removal, pursuant to the Immigration and Nationality Act, Section 238, based on his aggravated felony conviction.  He further argues that his alien status affects his classification at FCI Fort Dix, making petitioner ineligible for certain programs offered by the Federal Bureau of Prisons ("BOP") and placement in a Community Correctional Center ("CCC") or Federal Prison Camp.

Next, Duncan argues that this Court does have subject matter jurisdiction over this habeas petition, citing Gorsia v. Loy, 357 F. Supp.2d 453 (D.Conn. 2005)(district courts have jurisdiction to grant a habeas petition to immigration detainees in custody in violation of U.S. laws or the Constitution; Gegiow v. Uhl, 239 U.S. 3 (1915)(district courts have jurisdiction to review legal matters decided by immigration officials to ensure that the detained alien received due process of law); and Calcano-Martinez

4

v. I.N.S., 232 F.3d 328, 337 (2d Cir. 2000)("Article III courts continue to have habeas jurisdiction under 28 U.S.C. § 2241 over legal challenges to final removal orders").

Finally, Duncan states that he has not filed an N-600 Application because he has to have his federal charge disposed before a Citizenship Certificate is released to him.  See 8 C.F.R. §§ 316.10 and 316.11.

## II.  ANALYSIS

Motions for reconsideration are not expressly recognized in the Federal Rules of Civil Procedure.  United States v. Compaction Sys. Corp., 88 F. Supp.2d 339, 345 (D.N.J. 1999). Generally, a motion for reconsideration is treated as a motion to alter or amend judgment under Fed.R.Civ.P. 59(e), or as a motion for relief from judgment or order under Fed.R.Civ.P. 60(b).  Id. In the District of New Jersey, Local Civil Rule 7.1(g) governs motions for reconsideration.  Bowers v. Nat'l. Collegiate Athletics Ass'n., 130 F. Supp.2d 610, 612 (D.N.J. 2001).

Local Civil Rule 7.1(g) permits a party to seek reconsideration by the Court of matters "which [it] believes the Court has overlooked" when it ruled on the motion.  L. Civ. R. 7.1(g); see NL Industries, Inc. v. Commercial Union Insurance, 935 F. Supp. 513, 515 (D.N.J. 1996).  The standard for reargument is high and reconsideration is to be granted only sparingly.  See United States v. Jones, 158 F.R.D. 309, 314 (D.N.J. 1994).  The

5

movant has the burden of demonstrating either: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [issued its order]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." Max's Seafood Café v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999)(*citing* N. River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir. 1995)). The Court will grant a motion for reconsideration only where its prior decision has overlooked a factual or legal issue that may alter the disposition of the matter. Compaction Sys. Corp., 88 F. Supp.2d at 345; see also L.Civ.R. 7.1(g). "The word 'overlooked' is the operative term in the Rule." Bowers, 130 F. Supp.2d at 612 (citation omitted); see also Compaction Sys. Corp., 88 F. Supp.2d at 345.

Ordinarily, a motion for reconsideration may address only those matters of fact or issues of law which were presented to, but not considered by, the court in the course of making the decision at issue. See SPIRG v. Monsanto Co., 727 F. Supp. 876, 878 (D.N.J.), aff'd, 891 F.2d 283 (3d Cir. 1989). Thus, reconsideration is not to be used as a means of expanding the record to include matters not originally before the court. Bowers, 130 F. Supp.2d at 613; Resorts Int'l. v. Greate Bay Hotel and Casino, Inc., 830 F. Supp. 826, 831 & n.3 (D.N.J. 1992); Egloff v. New Jersey Air National Guard, 684 F. Supp. 1275, 1279

(D.N.J. 1988). Absent unusual circumstances, a court should reject new evidence which was not presented when the court made the contested decision. See Resorts Int'l, 830 F. Supp. at 831 n.3. A party seeking to introduce new evidence on reconsideration bears the burden of first demonstrating that evidence was unavailable or unknown at the time of the original hearing. See Levinson v. Regal Ware, Inc., Civ. No. 89-1298, 1989 WL 205724 at *3 (D.N.J. Dec. 1, 1989).

Moreover, L.Civ.R. 7.1(g) does not allow parties to restate arguments which the court has already considered. See G-69 v. Degnan, 748 F. Supp. 274, 275 (D.N.J. 1990). Thus, a difference of opinion with the court's decision should be dealt with through the normal appellate process. Bowers, 130 F. Supp.2d at 612 (citations omitted); Florham Park Chevron, Inc. v. Chevron U.S.A., Inc., 680 F. Supp. 159, 162 (D.N.J. 1988); see also Chicosky v. Presbyterian Medical Ctr., 979 F. Supp. 316, 318 (D.N.J. 1997); NL Industries, Inc. v. Commercial Union Ins. Co., 935 F. Supp. 513, 516 (D.N.J. 1996) ("Reconsideration motions ... may not be used to re-litigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment."). In other words, "[a] motion for reconsideration should not provide the parties with an opportunity for a second bite at the apple." Tishcio v. Bontex, Inc., 16 F. Supp.2d 511, 533 (D.N.J. 1998)(citation omitted).

Here, Duncan points out several factual errors or omissions from his petition, which this Court did not consider. Namely, Duncan provided a copy of his Father's Certificate of Naturalization and petitioner's birth record, and Duncan asserts that he was financially supported by his father before Duncan came to the U.S. and that he was in the care and custody of his father after arriving here in 1986 (while Duncan was still a minor). Nevertheless, this Court finds that these facts, now brought to its attention, would not alter the outcome of its April 5, 2007 ruling.

Duncan now admits that he never filed a Form N-600 application with the CIS for derivative citizenship because he must have his federal conviction disposed.[3] He also concedes that he has received a notice of removal from the United States based on his aggravated felony conviction. Thus, Duncan's claim of derivative citizenship must be determined by the CIS before review by the federal courts. See Rivera-Martinez v. Ashcroft, 389 F.3d 207, 208-10 (1st Cir. 2004)(holding that alien cannot pursue derivative citizenship claim in a § 2241 habeas action because § 1252(b) establishes a specific statutory process for such claims), cert. denied, 545 U.S. 1142 (2005); McKenzie v. INS, No.Civ.A. 04-1001, 2005 WL 452371 (E.D. Pa. Feb. 23, 2005).

---

[3] Under 8 C.F.R. §§ 316.10 and 316.11, a applicant for naturalization must demonstrate good moral character and that he or she is law abiding.

Moreover, to the extent that Duncan wants his derivative citizenship claim reviewed by this Court so as to preclude his removal from the United States, the district court does not have jurisdiction.  The sole and exclusive avenue for review of a claim of nationality in the context of challenging removal from the United States is by direct petition for review to the United States Court of Appeals.  See Baeta v. Sonchik, 273 F.3d 1261, 1263-64 (9th Cir. 2001); Hughes v. Ashcroft, 255 F.3d 752, 755 (9th Cir. 2001).  See also Jordan v. Attorney General of the United States, 424 F.3d 320, 326 (3d Cir. 2005)(applicability of the REAL ID Act making the courts of appeals the arbiter of nationality claims asserted in the course of agency removal proceedings).

The relevant statute, 8 U.S.C. § 1252(b)(5), vests jurisdiction in the court of appeals to determine a claim of nationality for aliens in removal proceedings.[4]  Further, "where an individual is subject to removal proceedings, and a claim of derivative citizenship has been denied [in the removal proceedings], that individual may seek judicial review of the claim only before the appropriate court of appeals, not a

---

[4] If no genuine issue of material fact about the petitioner's nationality is presented, then the court of appeals shall decide the nationality claim.  8 U.S.C. § 1252(b)(5)(A).  If there exists a genuine issue of material fact concerning the nationality claim, then the court of appeals shall transfer the proceeding to the district court for a new hearing on the nationality claim.  8 U.S.C. § 1252(b)(5)(B).

district court." Henriquez v. Ashcroft, 269 F. Supp.2d 106, 108 (E.D.N.Y. 2003)(citing 8 U.S.C. § 1252(b)(5)).

Thus, Duncan has not demonstrated by this new information that he has actually exhausted his administrative remedies with the CIS concerning his claim of citizenship before seeking judicial review in this Court. See United States v. Breyer, 41 F.3d 884, 892 (3d Cir. 1994)("a federal district court does not have jurisdiction to declare citizenship absent exhaustion of an applicant's administrative remedies"). Moreover, given the fact that Duncan is now subject to removal proceedings, judicial review of his claim of derivative citizenship is available only before the appropriate court of appeals, not this District Court. See 8 U.S.C. § 1252(b)(5).

Duncan's reference to case law supporting his argument that the district court has jurisdiction also are unavailing. First, Gorsia v. Loy, 357 F. Supp.2d 453 (D.Conn. 2005) is not applicable because Duncan is not in custody of the DHS or ICE at this time. Rather, he is in custody of the FBOP until completion of the service of his federal sentence.

Second, there has been no decision by immigration officials respecting Duncan's claim of citizenship to review for due process violations, as Duncan suggested in citing to Gegiow v. Uhl, 239 U.S. 3 (1915). Finally, the REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 231 (May 11, 2005) has stripped the

district courts of habeas jurisdiction over legal challenges to final removal orders. Such challenges may only be reviewed by the appropriate court of appeals on a petition for review. Nevertheless, Calcano-Martinez v. I.N.S., 232 F.3d 328 (2d Cir. 2000) is not applicable here, as Duncan asserts, because Duncan is not challenging a final removal order and he is not in the custody of the DHS or ICE awaiting his removal.

This Court last notes Duncan's newly asserted claim that his alien status affects his classification status would not alter the ultimate outcome of dismissal in this case. Duncan now claims that his alien status prevents him from participation or eligibility for certain rehabilitative or early release programs at prison or placement in a CCC or prison camp.

Such a claim does not establish an infringement of a legally protected interest or right. In general, an inmate does not have a liberty interest in assignment to a particular institution or to a particular security classification. See Olim v. Wakinekona, 461 U.S. 238, 245 (1983); Meachum v. Fano, 427 U.S. 215, 224-25 (1976); Montayne v. Haymes, 427 U.S. 236, 243 (1976); Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976)(noting that prison classification and eligibility for rehabilitative programs in the federal prison system are matters delegated by Congress to the "full discretion" of federal prison officials and thus implicate "no legitimate statutory or constitutional entitlement sufficient

to invoke due process"). See also Sandin v. Connor, 515 U.S. 472, 484-86 (1995)(holding that a liberty interest is implicated only where the action creates "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" or creates a "major disruption in his environment"); Kentucky Dept. of Corrections v. Thompson, 490 U.S. 454, 463 (1989)(holding that a liberty interest arises only where a statute or regulation uses "explicitly mandatory language" that instructs the decision-maker to reach a specific result if certain criteria are met); Walker v. Hughes, 558 F.2d 1247, 1252 (6th Cir. 1977)("Federal statutory law gives federal prison officials full discretion in the treatment of prisoners and does not restrict the authority of prison officials over the inmates as to placement in more restrictive living status, transfer to other prisons, subjection to significant and adverse effects on parole dates, and deprivation of privileges."). Thus, to the extent that Duncan complains that his alien status limits his placement or transfer to a camp or halfway house, or other BOP facility, he does not have a cognizable liberty interest in such a transfer or placement.

Therefore, Duncan has not established any factual or legal issue that would serve to alter this Court's disposition of the matter as set forth in the April 5, 2007 Opinion and Order.

### III. CONCLUSION

For the reasons expressed above, Duncan's motion for reconsideration will be denied.  An appropriate Order follows.

s/Renée Marie Bumb<br>
RENÉE MARIE BUMB<br>
United States District Judge

Dated: June 8, 2007